1 David Carmona Tovar
2 A# 034-506-830
3 10450 Rancho Road
4 Adelanto, CA 92301
5 *Pro Se*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Name: David Carmona Tovar | Case No. **To Be Determined** |
| Petitioner, | ED CV24-1535-FLA (SSC) |
| v. | |
| Field Office Director, Los Angeles Field Office, | **PETITION FOR WRIT OF** |
| United States Immigration and Customs | **HABEAS CORPUS PURSUANT** |
| Enforcement; Director, United States Department | **TO 28 U.S.C. § 2241** |
| of Homeland Security; Secretary, and | |
| United States Attorney General, | |
| Respondents. | |

David Carmona Tovar ("Mr. Carmona") petitions this Honorable Court for a writ of habeas corpus to remedy Petitioner's prolonged detention by Respondents, mixed questions of law, and constitutional injury / claims.

**TEMPORARY RESTRAINING ORDER**

Accordingly, to obtain a TRO, Mr. Carmona must show (1) that he is likely to succeed on the merits of his claims, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

1  In regards to the first factor, Mr. Carmona is similarly situated to *Doe v. Becerra*, 2024
2  U.S. Dist. LEXIS 94028 and *Judulang v. Chertoff*, 562 F. Supp 2d 119 who were found to be a
3  danger to the community by an Immigration Judge ("IJ") who used decades old convictions to
4  justify continued prolonged detention. Both Cases were found to be an error of law and Mr.
5  Carmona believes since the Department of Homeland Security ("DHS") did not provide
6  (besides a 34 year old conviction) any other form of current evidence to proof dangerousness,
7  he has a strong likelihood of success on his merits.

8  Second factor, Mr. Carmona is not only likely to suffer irreparable harm, he *has* been
9  suffering from irreparable harm since IJ erred as a matter of law in denying bond. This
10 irreparable harm is primarily based on his challenged detention as arbitrary on due process
11 grounds. Deprivation of a Fifth Amendment due process right "unquestionably constitutes
12 irreparable injury." Melendres I, 695 F.3d at 1002; *See also Cortez v. Nielsen*, No. 19-cv-
13 00754-PJH, 2019 U.S. Dist. LEXIS 59351, 2019 WL 1508458, at *3 (N.D. Cal. Apr. 5, 2019).

14 Third Factor and fourth factor, "When the government is a party, these last two [Winter]
15 factors merge." Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073, 1092 (9th Cir. 2014). Mr.
16 Carmona has a strong interest in being granted a constitutionally adequate bond hearing, one
17 which he did not receive. The Court should find Mr. Carmona did not receive a
18 constitutionally adequate bond hearing, so that he can meaningfully exercise his due process
19 right and allowed to go before a neutral decision maker.

20 Furthermore in regards to the last factor, "Any de minimis cost the government may bear
21 is outweighed by the public's strong interest in upholding constitutional rights." Lewis v.
22 Garland, 2023 U.S. Dist. LEXIS 231037 at *12. See also Preminger v. Principi, 422 F.3d 815,
23 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional
24 right has been violated, because all citizens have a stake in upholding the Constitution.")

25 **JURISDICTION AND VENUE**

26 This Court has subject matter jurisdiction and may grant relief under 28 U.S.C. § 2241
27 (habeas corpus), 28 U.S.C. § 1651 (All Writs Act), and 28 U.S.C. § 1331 (federal question).
28 Although 8 U.S.C. § 1226(e) restricts jurisdiction in the federal courts in some respects, it

does not limit habeas jurisdiction over constitutional claims or questions of law. Like 8 U.S.C. § 1226(e), 8 U.S.C. § 1252(a)(2)(B)(ii) restricts jurisdiction only with respect to the executive's exercise of discretion. It does not limit habeas jurisdiction over questions of law, including application of law to undisputed facts, sometimes referred to as mixed questions of law and fact.

In *Singh*, the Ninth Circuit held that the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond. Id. at 1197.The Ninth Circuit also held that the application of an incorrect standard of proof at alien's bond hearing warranted granting habeas relief unless an alien was provided with a new hearing. Id at 1205-06. Therefore, this Court should retains jurisdiction over Mr. Carmona's habeas corpus.

Because Petitioner challenges his custody, jurisdiction is proper in this Court. While the Courts of Appeals have jurisdiction to review removal orders through petitions for review, see 8 U.S.C. § 1252(a)(1) and (b), the federal district courts have jurisdiction under 28 U.S.C. § 2241 to hear habeas petitions by noncitizens challenging the lawfulness of their detention. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001); *Nadarjah v. Gonzales*, 433 F.3d 1069, 1075-76 (9th Cir. 2006).

Venue is proper in the Central District of California pursuant to 28 U.S.C § 1391(b) and (e) because all substantial part of the events or omissions giving rise to these claims occurred in this district. All material decisions have been made at the Los Angeles Field Office of Immigration and Customs Enforcement (ICE), which has authority over detention of Petitioner and is located in this judicial district. *See Jensen v. Garland*, 2023 U.S. Dist. LEXIS 78505 (Habeas Corpus § 2241 filed while at the Adelanto Detention Facility which is under the purview of the Los Angeles FOD); *Lewis v. Garland*, 2023 U.S. Dist. LEXIS 231037 (same).

**PARTIES**

Mr. Carmona is a Legal Permanent Resident ("LPR") who is currently detained by Immigration and Customs Enforcement (ICE) at the Desert View Annex Detention Facility

1. at Adelanto, CA.
2. Respondent Field Office Director for the Los Angeles Field Office of ICE ("LA FOD") has the authority to order Petitioner's release or continued detention, As such, Respondent LA FOD is a legal custodian of Petitioner.
3. Respondent Director of ICE ("ICE Director") is the head of ICE, an agency within the United States Department of Homeland Security that detains and removes certain noncitizens. Respondent ICE Director is a legal custodian of Petitioner.
4. Respondent Secretary of the United States Department of Homeland Security ("DHS Secretary") is responsible for the implementation and enforcement of the immigration laws and oversees ICE. As such, Respondent DHS Secretary has ultimate custodial authority over Petitioner.
5. Respondent Attorney General of the United States ("U.S. A.G.") is the head of the United States Department of Justice, which oversees the immigration courts. Respondent

**All Respondents are sued in their official capacities.**

## FACTUAL ALLEGATIONS

1. I, David Carmona Tovar ("Mr. Carmona"), was born in Tijuana, Mexico.
2. Mr. Carmona entered the United States on or about March 11, 1974.
3. Mr. Carmona's immigration history is as follows: Mr. Carmona entered the United States at San Ysidro, California on or about March 11, 1974 as Lawful Permanent Resident. On or about July 2023, Mr. Carmona renewed his Permanent Residency which is still pending. Since I arrived at the U.S. I returned to Mexico when I was approximately 9 or 10 years old.
4. Mr. Carmona's criminal history is as follows: On September 26, 1991, the Superior Court of California, County of Los Angeles convicted Mr. Carmona of Murder. Mr. Carmona has paid his debt to Society and has no other convictions as an Adult.
5. Mr. Carmona was granted parole by the Board of Parole of California on December 22, 2022. Governor Newsom also allowed and granted his release and he demonstrated to the Board of Parole and the Governor that he no longer is a danger to society and had extensive rehabilitation.

1    ICE lodged a detainer on Mr. Carmona since 1992 and removed detainer on June 12,
2    2023. ICE was not sure if Mr. Carmona retained US Citizenship through his parents.
3    Therefore, ICE who did not see Mr. Carmona as a danger then, decided to release Mr.
4    Carmona into society.
5    Mr. Carmona was out in the community volunteering at non-profit organizations
6    and beginning to rebuild a productive life. Mr. Carmona continued rehabilitation programs and
7    complied with all conditions of his parole. He was out for approximately 2 and a half months.
8    Mr. Carmona was detained by Immigration and Customs Enforcement on or
9    about August 24, 2023. Petitioner has remained in ICE custody since that date.
10   An Immigration Judge ordered Mr. Carmona removed from the United States on
11   February 26, 2024. Mr. Carmona also had he bond hearing denied by the same IJ on the same
12   day. Mr. Carmona appealed both decisions (merits and bond denial) by the Immigration Judge
13   to the Board of Immigration Appeals.
14   On June 17, 2024, the BIA affirmed the denial of Mr. Carmona's merits hearing and
15   finalized his removal order.
16   On June 28, 2024, the BIA stated on Mr. Carmona's bond appeal, "However, the record
17   reflects that a final order was entered in the respondent's removal case on June 17, 2024. Thus,
18   there is now an administratively final order. See 8 C.F.R. §2241.1 (a). At this time, neither an
19   Immigration Judge nor this Board has authority to set bond conditions because a final order of
20   removal has been entered in the respondent's case. ORDER: The bond appeal is dismissed as
21   moot.
22   On July 12, 2024, Mr. Carmona filed a bond request due to changed circumstances
23   pursuant to 8 C.F.R. § 1003.19(e). Mr. Carmona filed it under 3 new circumstances (1)
24   appointed a bar panel attorney in the Superior Court of California, County of Los Angeles
25   pursuant to a motion I filed pursuant to 1473.7, (2) filed a Petition for Review in the Ninth
26   Circuit Court of Appeals which was accepted and opened as Case No. 24-3856 (3) continued
27   participation in rehabilitative programming.
28   On July 16, 2024, the Court denied the bond request motion.

1. Mr. Carmona filed an appeal with the BIA.

## EXHAUSTION WAIVER

Mr. Carmona has exhausted all available remedies that had the potential to bear fruit. Mr. Carmona does not believe he needs an exhaustion waiver in terms of his second bond appeal pursuant to his changed circumstances because the constitutional injury stems from his February 26, 2024, unconstitutional bond hearing.

Regardless, Mr. Carmona will humbly seek the exhaustion waiver for his changed circumstances bond denial. The Court may waive the exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft,* 370 F.3d at 1000 (9th Cir. 2004). The BIA has already stated it does not have the power to grant Mr. Carmona bond as a final removal order has been issued.

Continued detention without an exhaustion waiver or constitutionally adequate procedural safeguard would essentially turn a blind eye as Mr. Carmona "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." *Cortez v. Sessions,* 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018) (citation omitted).

Mr. Carmona has been in detention for 11 months and 5 months since his last bond hearing which was not constitutionally adequate in violation of his due process right.

Mr. Carmona's February 26, 2023 bond hearing was not constitutionally adequate for the foregoing detailed reasons below and "petitioner's irreparable harm-based argument begs the constitutional questions presented in his petition by assuming that petitioner has suffered a constitutional injury." *Cortez v. Nielsen,* No. 19-cv-00754-PJH, 2019 U.S. Dist. LEXIS 59351, 2019 WL 1508458, at *3 (N.D. Cal. Apr. 5, 2019).

Furthermore and most evidently because the BIA does not have jurisdiction to answer questions of law and constitutional concerns. *See Liu v. Waters,* 55 F.3d 421, 425 (9th Cir. 1995) ("the BIA has no jurisdiction to decide questions of the constitutionality of the

immigration laws"); *See also Re Fuentes- Campos,* 21 I. & N. Dec. 905, 912 (BIA 1997) (BIA holding it "must apply the statue as written to the cases that come before us. It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer . . . {E}ven if we were to perceive a constitutional infirmity in the unambiguous statue before us, we would be without authority to remedy it.") Therefore, the honorable District Court should waive exhaustion in this case.

## LEGAL FRAMEWORK

Mr. Carmona's detention is unjustified and unconstitutional, the IJ was not a neutral decision-maker, nor was there clear and convincing evidence to support the denial of bond, in violation of his due process rights. These claims clearly show that the discretionary process was constitutionally flawed. *See Santosky v. Kramer,* 455 U.S. 745, 754, 102 S. Ct. 1388, 71 L. Ed. 2D 599 (1982). (directing courts to consider certain factors "to determine whether a particular standard of proof in a particular proceeding satisfies due process").

Prolonged detention without a constitutionally adequate bond hearing violates the Due Process Clause of the Fifth Amendment of the Constitution. The Fifth Amendment's Due Process Clause provides that "no person shall be ... deprived of life, liberty, or property, without due process of law." This specifically "entitles aliens to due process of law in deportation proceedings." *Reno v. Flores,* 507 U.S. 292, 306, 113 S. Ct. 1439, 123 L. Ed. 2d (1993).

The IJ erred as a matter of law relying solely on past conviction with no evidence of current dangerousness. DHS did not present any evidence of dangerousness past Mr. Carmona's 1991 murder conviction. Convictions are insufficient to establish present and *current* dangerousness *See Judulang v. Chertoff,* 562 F. Supp 2d 119 (holding "Where petitioner's only relevant conviction for violence is nearly 20 years old and no other evidence indicating dangerousness was put forward, the IJ's finding of present dangerousness was an error of law and the denial of bond was inappropriate). Mr. Carmona offense and arrest is 34 and a half years old. Well beyond that of *Judulang's.*

Similarly, in Doe v. Becerra, "Although Mr. Doe was convicted more than two

1  decades ago of serious crimes, he has demonstrated rehabilitation efforts while in state
2  custody. The government has submitted no evidence from after 2001 suggesting that Mr. Doe
3  remains dangerous." *Id.* at 40 and that "Mr. Doe's continued detention without having been
4  afforded the procedural protections required by the Constitution before such punishment can
5  be imposed violates his rights under the Due Process Clause of the Fifth Amendment." Id. at
6  41., 2024 U.S. Dist. LEXIS 94028
7       In order for Mr. Carmona to be held under prolonged periods of time while removal
8  proceedings are pending. See *Demore v. Kim*, 538 U.S. 510, 530, 123 S. Ct. 1708, 155 L. Ed.
9  2d 724(2003) ("Detention during removal proceedings is a constitutionally permissible
10 part of that process."). But, Due Process requires the government to show by clear and
11 convincing evidence that the detainee presents a flight risk or a danger to the community at the
12 time of the bond hearing. *Singh v. Holder,* 638 F.3d 1196, 1208 (9th Cir. 2011); *see also Ngo v.*
13 *INS,* 192 F.3d 390, 398 (3d Cir. 1999) ("Measures must be taken to assess the risk of flight and
14 danger to the community on a current basis.")(emphasis added).
15      To satisfy the clear and convincing standard, overwhelming evidence is not
16 required. *See Rodriguez v. Robbins,* 804 F.3d 1060, 1090 (9th Cir. 2015) ("*Rodriguez* III"),
17 cert. Granted by *Jennings v. Rodriguez,* 136 S. Ct. 2489, 195 L. Ed. 2D 821 (U.S. 2016). But
18 at the bare minimum, some evidence needs to be put forward to justify continued detention.
19 The Ninth Circuit has stated that there is a difference "between detention being authorized and
20 being necessary as to any particular person." *Casas,* 535 F.3d at 949.
21      As stated above, Mr. Carmona was not afforded this constitutional right as DHS
22 did not provide anything beyond a 30+ years old conviction. More evidently, DHS did not
23 present a single piece of evidence that even slightly demonstrated Mr. Carmona being a flight
24 risk. In discussing *Sales v. Johnson,*, "Here, the Court is not persuaded that clear and
25 convincing evidence supports the IJ's flight risk finding. At neither bond hearing did the
26 government argue that Petitioner was a flight risk, nor did the government present any
27 evidence to that effect. In addition, the IJ appeared to deny bond mainly because Petitioner had
28 been ordered removed, and Petitioner's claim in his petition for review to the Ninth Circuit

was unlikely to succeed." 323 F. Supp. 3d 1131 at 1141.

The IJ found Mr. Carmona a flight risk because the IJ could not see any avenues of relief for Mr. Carmona, but such reasoning can not stand and is in contrast with binding Ninth Circuit precedent. *See Singh*, 638 F. 3d at 1025 ("[T]he only evidence the BIA cited for its affirmance of the IJ's conclusion that Singh was a flight risk was the fact – common to all detainees afforded Casas bond hearings – that Singh had already been ordered removed by a final, administrative order, diminishing his incentive to appear for further removal proceedings. Although this is a relevant factor in the calculus, it alone does not constitute clear and convincing evidence that Singh presented a flight risk justifying denial of bond."

The IJ erred as a matter of law on both grounds, dangerousness and flight risk in this particular case. The IJ reasoning goes against District Courts, Ninth Circuit and Supreme Court precedent. Mr. Carmona's bond hearing was not constitutionally adequate because the IJ did not hold the government to its burden regardless of his mandatory detention.

## MANDATORY DETENTION

Mr. Carmona is being held in custody under § 1226(c) which is mandatory detention. But even where prolonged detention is permissible – as is the case with Mr. Carmona – "due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement' outweighs the individual's constitutionally protected interest in avoiding physical restraint." Singh, 638 F.3d at 1203 (quoting *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008), quoting *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L. Ed. 2D 653 (2001)).

Mandatory detention under § 1226(c) must be coupled with due process. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Id* at. 334. (alteration in original) (citation omitted). The Ninth Circuit has doubted "that any statue that allows for arbitrary prolonged detention without any process is constitutional." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2019). Mr. Carmona's bond

hearing was not constitutionally adequate and it calls for the Court to step in. Moreover, "This is not a question of how two-reasonable factfinders could weigh the evidence differently." *Mathon v. Searls*, 623 F. Supp. 3d 203 at *215.

While Mr. Carmona has been held in mandatory condition, he has been forced to be held in condition worse than some of the time he spent in prison and with less privileges.

## CONDITIONS OF DETENTION

Mr. Carmona's detention has become punitive and violates his Eight Amendment right. The Supreme Court held more than a century ago that civil detention of a removable noncitizen violates the Constitution if is punitive. *Wong Wing v. United States*, 163 U.S. 228, 237-38, 16 S. Ct. 977, 41 L. Ed. 140 L. Ed. 140 (1986). At a "bare minimum", noncitizens subject to civil immigration detention – just like people detained under civil process or accused but not convicted of a crime – "cannot be subjected to conditions that 'amount to punishment." *See Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (*quoting Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2D 447 (1979)).

Mr. Carmona has been detained at the Desert View Annex in Adelanto, CA for 10 months. As a civil detainee, Mr. Carmona is entitled to more considerate treatment than criminal detainees whose conditions of confinement are designed to punish. *See Youngberg v. Romeo*, 457 U.S. 307, 321-22, 102 S. Ct. 2452, 73 L. Ed. 2D 28 (1982). But the fact of the matter is that Mr. Carmona has been under treatment worse than that of an inmate.

Mr. Carmona has less access to the law library than he did while in prison. He has less access to yard and night yard. He has less access to his family through visits, phone calls, video calls, and family visits. He has less access to his attorney. He has less access to rehabilitation programs. He has less access to food sales and quarterly packages. He has less access to job offers. He has less access to affordable telecommunications services like phone calls, tablets, and video calls. He has less access to his own television, personal clothes, personal shoes, hair cut/trimmer machines, personal storage for legal space, and enough space to store personal belonging like hygiene, cosmetics, and other similar items. He has less access to personal music gear like CD's, CD players, Mp3 player, and more. He has less access to

legal material as the detention has barred incoming mail from free services like Prison Legal News. He has less access to medical care without delay and medical accommodations. Mr. Carmona also engaged in a 3 day hunger strike with about 80+ other detainees protesting the worsening conditions at the facility.

Mr. Carmona has paid his debt to society and is no longer an inmate, he is a civil detainee, but his detention is worse than some of the time he served while in prison. While discussing, *Doe v. Becerra,* "In *Jones,* for example, the Ninth Circuit considered the due process rights of people who had completed prison sentences but remained in detention pending involuntary civil commitment proceedings. The court emphasized that people detained under civil rather than criminal process are "entitled to more considerate treatment than … criminal counterparts are held," courts "presume that the detainee is being subjected to 'punishment." and that "If conditions of civil confinement are equivalent to or more restrictive than criminal detention or civil post-commitment detention, they are presumptively punitive and the burden shifts to the government "to show (1) legitimate, non-punitive interests justifying the conditions of the detainee's confinement and (2) that the restrictions imposed are presumptively punitive and the burden shifts to the government "to show (1) legitimate, non-punitive interests justifying the conditions of the detainee's confinement and (2) that the restrictions imposed are not excessive in relation to these interests." *King v. Cty, of L.A.,* 885 F.3d 548, 557 (9th Cir. 2018)(cleaned up) (citing Jones, 393 F.3d at 933).

Desert View Annex is next to Adelanto processing center which is under a restricted Covid Court Order. Desert View Annex is under modified Covid restrictions because of that Court order. Mr. Carmona is being subjected to worse conditions than in prison at the Desert View Annex. *See Lewis v. Garland,* 2023 U.S. Dist. LEXIS 231037 (stating conditions and treatment at Adelanto).

Mr. Carmona only seeks to remedy his immigration proceedings and is in the pursuit for avenues of relief, but should not be kept in such conditions. Such conditions amount to punishment and this Court should mandate the Immigration Court to conduct a constitutionally adequate bond hearing or should immediately release with appropriate super

vision conditions that do not amount to punishment and are less harsh.

## CLAIM FOR RELIEF

### VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT

The foregoing allegations are realleged and incorporated herein.

Mr. Carmona's detention is unjustified and unconstitutional, the IJ was not a neutral decision-maker, nor was there clear and convincing evidence to support the denial of bond, in violation of his due process rights. These claims clearly show that the discretionary process was constitutionally flawed.

Mr. Carmona's detention has become punitive and violates his eight amendment right.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that the Court grant the following relief:

a. Assume jurisdiction over this matter;

b. Issue an order pursuant to 28 U.S.C. § 2243 directing Respondents to show cause why the writ of habeas corpus should not be granted;

c. Grant the writ of habeas corpus and order Petitioner's immediate release from custody or in the alternative a constitutionally adequate bond hearing;

d. Grant any other and further relief as the Court deems just and proper

Date: 7-18-24           Signature: _____

David Carmona Tovar

A# 034-506-830

